UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO.: 1:18-CR-28-HAB |
| | ) | |
| BRONTE MILTON | ) | |

**OPINION AND ORDER**

Defendant Bronte Milton ("Milton") seeks compassionate release under 18 U.S.C §3582(c)(1)(A) (ECF No. 71). She asks the Court to reduce her sentence because of her health conditions and her previous COVID-19 diagnosis. Additionally, she argues that she received a mandatory "stacked" sentence that has now been made discretionary by the First Step Act. The Government opposes the motion (ECF No. 79). Milton did not file a reply. Because the Government is correct that Milton has not set forth an extraordinary and compelling reason to support her request for compassionate release, the Defendant's motion will be DENIED.

**DISCUSSION**

**I.      Factual and Procedural History**

In 2016, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) began investigating an armed drug trafficking organization monikered "Thrust Godz" who were operating out of hotels in the Fort Wayne, Indiana. (Presentence Investigation Report (PSR), ¶¶s 9-35). The ATF identified Milton as a member of the Thrust Godz and conducted numerous controlled buys of fentanyl using a confidential informant (CI). These buys, for the most part, occurred at Milton's address on Fairfield View Place and a second address on South Anthony Boulevard, both in Fort Wayne. During the buys, the CI observed firearms at the buy locations.

At some point during one of the buys, the CI came under suspicion. Milton and other Thrust Godz members searched the CI and Milton held a curling iron to the CI's chest, burning him. Eventually, federal search warrants were served at several locations, including the Fairfield View Place residence. Milton was present during the search and the officers located a loaded pistol, a digital scale, pills, crystal methamphetamine, cocaine, and fentanyl in her bedroom. More firearms, drugs, and 14 scales were found throughout the house.

Milton was charged in a five-count indictment with distribution and possession with intent to distribute, in violation of 21 U.S.C. §841(a)(1) (Counts 1 and 3); two counts of maintaining a drug involved premises, in violation of 18 U.S.C. § 856(a) (Counts 2 and 5); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count 4). She pled guilty to Counts 3 and 4, pursuant to a plea agreement, in exchange for the dismissal of the remaining counts. On August 29, 2019, the Court sentenced Milton to 96 months imprisonment on Count 3 and a consecutive 60 months imprisonment on Count 4. The 96 months represented a variance of 12 months imprisonment on Count 3. The Court imposed four years of supervised release. (ECF No. 69). Milton is currently housed at Lexington, FMC with an expected release date of April 5, 2029.

## II. Legal Analysis

### A. *Compassionate Release Standard*

Defendant's motion requests compassionate release. Generally, a court is statutorily prohibited from modifying a term of imprisonment once imposed. *See* 18 U.S.C. § 3582(c). A handful of statutory exceptions exist, however, one of which allows a court to grant an inmate compassionate release if the inmate meets certain requirements. *See* 18 U.S.C. § 3582(c)(1)(A). Under this provision, a court may not modify a term of imprisonment except that –

(1) in any case --

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, . . . finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction …
>
> … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i).

Because Milton herself, not the Director of the BOP, filed the motion, she must first show that she has satisfied the statutory exhaustion requirement. The Government concedes that Defendant has properly exhausted her remedies. (ECF No. 79 at 6).

Congress did not define "extraordinary and compelling reasons" in the statute, instead delegating the matter to the Sentencing Commission to promulgate a policy statement that "describe[s] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The policy statement, in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 and the accompanying Application Notes, have not been amended to reflect the First Step Act's change to § 3582(c)(1)(A) allowing prisoners to bring compassionate release claims directly. *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)[1]. As a result, "§ 1B1.13 and its application notes provide useful – but not binding – guidance to courts in determining whether a defendant has identified an extraordinary and compelling reason for compassionate release." *United States v.*

---

[1] Yet as *Gunn* made clear, the Guidelines' requirement that the court consider whether the reduction is otherwise "consistent with this policy statement" does not limit a district judge's discretion. This is because the statute by which the district court is bound requires a reduction to track "applicable policy statements." And the Sentencing Commission has not yet issued a policy statement "applicable" to Defendant's request. Thus, *Gunn* held, "[a]ny decision is 'consistent with' a nonexistent policy statement." *Gunn*, 980 F.3d at 1180

*Hoskins*, No. 2:99 CR 117, 2020 WL 7640408, at *2 (N.D. Ind. Dec. 23, 2020) (citing *Gunn*, 938 F.3d at 1180). Indeed, "[d]istrict judges must operate under the statutory criteria–'extraordinary and compelling reasons'–subject to deferential appellate review." *Gunn,* 980 F.3d at 1181.

Using the guidance of §1B1.13 to inform the statutory criteria, the court considers the medical condition of the defendant, her age, her family circumstances, and whether there is in the defendant's case an extraordinary or compelling reason "other than or in combination with" the other reasons described in the Application Notes. Second, the Court determines whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, the Court considers the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

### B. *Defendant Cannot Show Extraordinary and Compelling Reasons for Release*

In considering Milton's request, "a district court's analysis, at a minimum, must reasonably assure [the Seventh Circuit] that it at least considered the prisoner's principal arguments." *United States v. Rucker*, 27 F.4th 560, 563 (7th Cir. 2022). To that end, Milton offers two reasons that she believes are extraordinary and compelling entitling her to compassionate release. Defendant first argues that she is obese, has seizures/epilepsy and she "possibly" has chronic kidney disease. (ECF No. 71 at 2). She states that she has previously contracted COVID-19 and she believes these conditions make her vulnerable to contracting the virus again. Second, she requests the Court to reduce her sentence so that the terms of imprisonment for Counts 3 and 4 run concurrent rather than consecutive. Milton believes that the First Step Act now makes the determination of whether a §924(c) conviction runs consecutive to other sentences a discretionary decision rather than a mandatory one.

### 1. **Milton's Medical Conditions do not Support Compassionate Release**

Turning first to Milton's medical conditions and her concerns that they make her more vulnerable to repeat COVID-19 infections, there is simply no support in the record for such a conclusion. Milton suggests she suffers from seizures/epilepsy but her medical records do not confirm this diagnosis. Her records dated 3/4/21 and 12/4/19 under "Epilepsy/Seizure Disorder" contain these notations, "self-reported unconfirmed," "noncompliant with treatment," "[l]ikely no seizure disorder." (ECF No. 71-1 at 10). While Milton was prescribed medication for seizures, that medication was discontinued in December 2021 because the condition "resolved" and Milton was noncompliant with her medication. (ECF No. 81, Ex. 4).

Milton also contends she "possibly" has chronic kidney disease and is obese. She has provided no medical confirmation demonstrating she suffers from any kidney disease. Milton is obese. (ECF No. 81, Ex. 8, showing Milton's BMI is 30.5). That said, Milton has not identified any current medical issues from her obesity that negatively impact her health. Further, Milton's current care designation is "healthy or simple chronic care" (ECF No. 71-1 at 15). She has no medical restrictions. (*Id.*).

Moreover, vaccines have all but eliminated COVID-19 as a basis for compassionate release under 18 U.S.C. § 3582(c)(1)(A). In *United States v. Broadfield*, 5 F.4th 801 (7th Cir. 2021), the court stated:

> Section 3582(c)(1)(A) was enacted and amended before the SARS-CoV-2 pandemic, and it will continue to serve a beneficent function long after the pandemic ends. But for the many prisoners who seek release based on the special risks created by COVID-19 for people living in close quarters, vaccines offer relief far more effective than a judicial order. A prisoner who can show that he is unable to receive or benefit from a vaccine still may turn to this statute, but, for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an "extraordinary and compelling" reason for immediate release.

*Id*.

More recently, in *United States v. Clemons*, 2022 WL 1436801 (7th Cir. May 6, 2022), the Seventh Circuit declined to revisit *Broadfield*. In that case, Clemons asserted that the CDC's "understanding of vaccines has changed, and new variants are more likely to infect people who have been vaccinated or, like him, previously infected." *Id. at* *1. The court, not moved by this argument, reaffirmed *Broadfield* holding: "Despite the threat of new coronavirus variants, we reiterate that an inmate's risk of COVID-19 cannot justify compassionate release absent an inability 'to receive or benefit from a vaccine.'" *Clemons*, 2022 WL 1436801 at *2 (quoting *Broadfield*, 5 F.4th at 803).

Milton is double vaccinated and boosted. (ECF No. 71-1 at 12). While she has had COVID, there is nothing in Milton's medical records showing that she continues to suffer severe symptoms from the disease or that the vaccines are ineffective and offer her no benefit. Milton has also not presented any evidence from which the Court could conclude that despite her vaccination status she remains vulnerable to severe infection due to her medical conditions. *See United States v Rucker,* 27 F.4th 560, 563 (7th Cir. 2022) (identifying the Omicron variant and stating that *Broadfield* "included a safety valve for prisoners to show that they are unable to receive or benefit from a vaccine, or that they remain vulnerable to severe infection, notwithstanding the vaccine.") Thus, there is no basis to conclude that her underlying medical conditions justify compassionate release.

### 2. The First Step Act's Changes are not Extraordinary and Compelling Circumstances

Milton next contends that the First Step Act's changes to § 924(c)'s penalty structure presents an extraordinary and compelling reason for compassionate release. She contends that she received a "stacked" sentence and the Court has discretion under §3582(c)(1)(A) to run her § 924(c)

conviction and her conviction for possession with intent to distribute concurrently. She is wrong both substantively and procedurally.

First, a conviction for a single count of using a firearm during a drug trafficking offense carries a mandatory minimum penalty of five years imprisonment, to run consecutive to any term of imprisonment imposed for the drug trafficking crime. 18 U.S.C. §924(c)(1)(A)(i); 18 U.S.C.A. § 924(c)(1)(D)(ii). Before December 21, 2018 (the date the First Step Act was enacted), a defendant who was convicted of multiple §924(c)(1) counts in a single case could receive a so-called "stacked" sentence – that is a consecutive mandatory 5-year penalty for the first conviction and a consecutive mandatory 25-year penalty for a second or subsequent conviction. The First Step Act amended § 924(c)(1)(C)(i) so that only a second § 924(c) violation committed *after a prior conviction* for the same offense will trigger the 25-year minimum. First Step Act § 403(a); *see United States v. Davis*, ––– U.S. –––, 139 S. Ct. 2319, 2324 n.1 (2019); *United States v. Peoples*, __ F.4th __, 2022 WL 2825834 at *2 (7th Cir. July 20, 2022).

Here, Milton refers to her sentence as a "stacked" sentence under §924(c). It is not. Milton was sentenced to a term of imprisonment on the drug offense and a consecutive 5-year mandatory sentence on a single §924(c) conviction. The First Step Act did not amend the penalties for a single §924(c) conviction nor did it eliminate the requirement that the penalty *shall* run consecutive to the term of imprisonment imposed for the drug trafficking crime. Thus, she has not demonstrated any substantive error in the calculation of her sentence.

Second, Milton is procedurally barking up the wrong tree. She was sentenced after December 21, 2018, the effective date of the First Step Act and thus, any changes to the §924(c) penalties would have been applicable at her sentencing. *See United States v. Thacker,* 4 F.4th 569, 573 (7th Cir. 2021) (noting that the First Step Act changes were prospective only and applied to

7

cases sentenced after the effective date). She is not arguing, as others have done in the cases she cites, that a beneficial change in the law occurred *after* she was sentenced and would today yield a lesser sentence as a basis for compassionate release. Rather, the mandatory consecutive 5-year sentence for the §924(c) offense she received at her sentencing is the exact sentence she would receive if she were sentenced today. But *Thacker* holds that compassionate release is not intended "to operate in a way that creates tension with the principle path and conditions Congress established for federal prisoners to challenge their sentences." *Id.* at 574. Indeed, *Thacker* forecloses her from making this argument now as a basis for compassionate release. *Id.* at 576 (holding that "the prisoner must identify an 'extraordinary and compelling' reason warranting a sentence reduction, but that reason cannot include, whether alone or in combination with other factors, consideration of the First Step Act's amendment to § 924(c)."). Thus, Milton cannot use the First Step Act's amendment as an extraordinary and compelling reason.

### 3. Defendant's Reasons are not Extraordinary or Compelling Alone or in Combination

As discussed above, neither Defendant's medical circumstances nor her sentence under §924(c) are extraordinary or compelling on their own. The Court has considered the reasons together and finds them no more worthy of compassionate release. *United States v. Newton*, 996 F.3d 485, 489 (7th Cir. 2021) (finding that proposed extraordinary and compelling reasons must be considered cumulatively). Taken together, Defendant's medical conditions, to the extent they exist, are not such that they put her at a significantly greater risk than the average individual. Further, the Seventh Circuit has held that the §924(c) amendment, even if it were applicable here, is never an extraordinary or compelling reason. Thus, Milton has not shown that alone or in combination the reasons she provides justify compassionate.

Finding no extraordinary or compelling reasons for release, the Court need not consider the § 3553(a) factors. *United States v. Ugbah*, 4 F.4th 595, 598 (7th Cir. 2021).

## **CONCLUSION**

For the above reasons, the Defendant's Motion for Compassionate Release under 18 U.S.C. §3582(c)(1)(A) is DENIED. (ECF No. 71).

SO ORDERED on August 16, 2022.

    s/ *Holly A. Brady*
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT